DELBELLO, DONNELLAN, WEINGARTEN,  *Hearing Date: December 10, 2014*
WISE & WIEDERKEHR, LLP  *Hearing Time: 3:00 p.m.*
Counsel for the Debtor
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

OMC, INC.,                                       Chapter 11
                                                 Case No. 14-12854 (MG)

                              Debtor.
------------------------------------------------------------X

**DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTION 363(b)
AND (f) OF THE BANKRUPTCY CODE AND RULES 2002, 6004 AND
9006 OF THE FEDERAL RULESOF BANKRUPTCY PROCEDURE
AUTHORIZING A PRIVATE SALE OF CERTAIN OF THE DEBTOR'S
ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS**

TO:    THE HONORABLE MARTIN GLENN,
       UNITED STATES BANKRUPTCY JUDGE:

       OMC, Inc. (the "Debtor"), the debtor and debtor-in-possession, by its attorneys, DelBello,

Donnellan, Weingarten Wise & Wiederkehr, LLP, submits this motion ("Motion") seeking entry

of an order (i) pursuant to §363(b) and (f) of the Bankruptcy Code and Rules 2002, 6004 and

9006 of the Federal Rules of Bankruptcy Procedure authorizing the private sale of certain of the

Debtor's assets free and clear of any and all claims, liens, encumbrances and other interests. In

support of this Motion, the Debtor respectfully represents:

## JURISDICTION AND VENUE

       1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This proceeding has been initiated pursuant to Bankruptcy Code §363(b) and (f).

**BACKGROUND**

4.      On October 10, 2014, (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The Debtor has continued in possession of its property and the management of its business affairs as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

5.      Since 1986, the Debtor has been a leading provider of subcontracting services in the commercial heating ventilation and air conditioning industry.   The Debtor provides several HVAC services, including drafting, fabricating and installing sheet metal ductwork for commercial buildings.  The Debtor principally operates in the New York metropolitan area, and is located at 4010 Park Avenue, Bronx, New York 10457 (the "Property").

6.      The Debtor previously filed a voluntary petition for relief under Chapter 11 with this Court on September 15, 2010 and the proceedings were assigned to your Honor for administration (the "Prior Chapter 11 Case"). The Debtor successfully confirmed a Plan of Reorganization on January 26, 2012 (the "Prior Plan") in the Prior Chapter 11 Case which provided for the continuation of the Debtor in business subject to the Debtor making a series of payments to administrative, priority and non-priority creditors over a 54 month period. The Prior Plan payments were to total in excess of $1,000,000.

7.      After successfully making the required Plan payments for almost 2 and ½ years, the Debtor, fell behind in not only its Plan payments but many of its ongoing operating expenses. The Debtor attributed its most recent financial problems to astronomically increased insurance

costs, a fixed fee job that resulted in a significant loss and uncollected receivables from other companies similarly struggling in this difficult economy.

8.      The Debtor filed the current Chapter 11 case in order to utilize the bankruptcy process to wind down its operations in an orderly fashion and in a manner that would allow it to maximize the value of its assets upon liquidation for the benefit of its creditors.

9.      The Debtor has significant equity in its assets, both real and personal property and, other than BOA, has little to no secured debt obligations. Specifically, the Debtor currently has approximately $1,000,000 in collectable accounts receivable, various trucks, equipment and inventory having a value of several hundred thousand dollars, and net equity in its real property (after capital gains tax incurred in connection with a sale) in the hundreds of thousands.

10.     Over the past year the Debtor has investigated the possibility of selling its assets. The Debtor has had sale discussions with (i) HILCO Industrial, LLC, the preeminent liquidator of construction related equipment, (ii) Reich Brothers, LLC, which has disposed of industrial properties and machinery and equipment for more than 20 years, and (iii) other interested third parties via "word of mouth" in the industry.

11.     Furthermore, less than a year ago the Debtor met with highly experienced commercial real estate brokers who believed that the Property would likely sell on the open market for approximately $2.4 to $2.5 million dollars.

12.     In or about mid-October of this year the Debtor received an offer of $2.2 million dollars to purchase not just the Property but all of the Debtor's equipment and ongoing business. According the Debtor's Schedule B – Person Property, the Debtor valued the equipment at $200,000 (the "Equipment"), leaving $2.0 million attributable to the Property.

13.     Recently, the Debtor's principal approached the owner of the business which operates Atlas Fire Door ("Atlas") in the adjacent property. The Debtor believed that Atlas may be interested in purchasing the Property as they are uniquely positioned to make the best use of the Property; Atlas could expand its operations by merging the Debtor's portion of the building with their existing space and would have use and control of the parking lot which is valuable since Atlas currently has no parking lot whatsoever.

14.     The offer to sell the Property to Atlas' sparked a fruitful and arm's length negotiation. Ultimately the Debtor accepted an offer from Webster Avenue Management, LLC, an affiliate of Atlas, to purchase the Property for $2.45 million dollars which was an increase from Atlas' initial purchase offer.

15.     The Debtor's decision to accept Purchaser's offer, subject to higher and better offers and Bankruptcy Court approval, was based upon a number of factors. First and foremost, the Debtor believes that the offer represents the highest and best offer for the Property based upon the current real estate market. This offer was not procured through a real estate broker so no commission is due which could have otherwise reduced the net proceeds of sale by as much as $250,000.[1] In addition, the offer is not subject to any financial, due diligence or inspection contingencies. Accordingly, the Debtor anticipates a swift closing with Purchaser which will yield the highest and best price for the Property without the need for the estate to incur additional administrative carrying costs for the Property during a prolonged sale process.

16.     The Debtor is currently negotiating a contract of sale with Webster Avenue Management, LLC and expects to file a motion to approve the sale of the Property shortly.

17.     Thereafter, the Debtor has endeavored to sell its Equipment piecemeal. The Debtor has recently received offers on the sale of certain of its Equipment as follows:

---

[1] This assumes an even higher purchase price of $2,500,000 and a customary broker commission of 6%.

(1) Large Pittsburg (16ga) 3 in 1
Price for New: $4,000
Age: Over 30 years
Sale Price: $2,000.00

(1) 20GA Pittsburg
Price for New: $3,500
Age: Over 30 years
Sale Price: $1,500.00

(1) 18GA Edger
Price for New: $2,000
Age: Over 30 years
Sale Price: $500.00

(1) Lock former Water Jet Machine
Price for New: $75,000
Age: 2-3 years old
Sale Price: $25,000.00

(1) Engel Coil Line
Price for New: $350,000
Age: 14 years old
Sale Price: $125,000.00

(1) Engel TDF
Price for New: $8,000
Age: 14 years old
Sale Price: $12,000.00

(1) Chicago Brake
Price for New: $20,000
Age: Over 30 years
Sale Price: $18,000.00

(1) Plasma Machine
Price for New: $40,000
Age: Approx. 27 years old
Sale Price: $10,000.00

(1) Vane Runner
Price for New: $2,000
Age: Over 30 years
Sale Price: $500.00

(1) Band Saw
Price for New: $2,000
Age: Over 30 years
Sale Price: $500.00

(1) Clark Forklift Model #c-500-135 (Not running)
Price for New: $4,500
Age: Over 30 years
Sale Price: $1000.00

(1) Hand Brake
Price for New: $1,000
Age: Over 30 years
Sale Price: $250.00

(1) Millermatic 251 Welder with Wire
Price for New: $1,000
Age: Approx. 5 years
Sale Price: $1,000.00

(1) Durodyne Pinspotter with tables
Price for New: $4,000
Age: 15 years
Sale Price: $1,000.00

(1) Hyster forklift 6,000 lbs
Price for New: $4,000-$5,000
Age: Approx. Over 30 years
Sale Price: $750.00 (received prior offer for $500.00)

(1) Wysong 10'-0 10 Gauge Sheer
Price for New: $30,000
Age: Approx. Over 30 years
Sale Price: $8,000.00

2009 International Box Truck
Value as per Comparable Listing: $17,450
Age: 5 years old
Sale Price: $17,500

18.    The Debtor is seeking approval to sell the Equipment at the Sale Price to the

respective purchasers in connection with the purchaser offers annexed hereto as **Exhibit "A."**

19.    In addition, the Debtor seeks to authority to sell the remaining Equipment at no

less 50% of their value listed on the Debtor's Schedule B filed with the Court (the "Minimum

Sale Price"), without further application or order of this Court.

20.    The Debtor submits that the Equipment is not necessary for the Debtor's

reorganization in that the Debtor is ceasing operations and liquidating all of its assets.

21.    The Debtor intends on placing all of the sale proceeds from the sale of the

Equipment into an attorney escrow account maintained by its attorneys, DelBello Donnellan

Weingarten Wise & Wiederkehr, LLP, pending distribution under a chapter 11 plan to be

submitted and confirmed by the Court.

## RELIEF REQUESTED AND BASIS FOR RELIEF

**A.    Justification for Private Sale**

22.    While many section 363 sales are conducted under competitive bidding

procedures, there is no requirement in section 363 of the Bankruptcy Code to do so.

23.    In fact, Bankruptcy Rule 6004(f) specifically contemplates private sales with the

statement that "[a]ll sales not in the ordinary course of business may be by private sale or by

public auction".

24.    Courts have noted that private sales are appropriate under section 363 in

circumstances similar to the instant case. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y.

1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the

Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private

sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape

Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect sales of estate

property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").

25.    Accordingly, courts in this District have approved private sales of assets when they think the general standards for approval under section 363 of the Bankruptcy Code are satisfied. See, e.g., *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving the sales of one of the debtors' facilities' by private sale, not subject to higher and better offers); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft"); *In re Angelo & Maxie's, LLC*, Case No. 11-11112 (SCC)(private sale of famous NYC restaurant approved despite not yielding 100% recovery to creditors).

26.    Given the limited market of potential purchasers, the Debtor believes that the private sale is justified in order to save the Debtor's estate on the expenses associated with an auction process. Furthermore, the permitting the Debtor to sell the remaining Equipment for no less than 50% of its scheduled value is in the best interests of the Debtor's estate in that the costs of proceeding by separate motion and marketing the sale of the Equipment would exceed the deminimus value of the Equipment.

27.    It is extremely unlikely that an overbid process will generate higher and better offers for the Debtor's Equipment. In fact, the Debtor believes it will be fortunate to find any buyers for the Equipment, in lieu of having to sell them for scrap metal. Moreover, because of the substantial carrying costs for the business that will be incurred in a competitive bidding process, conducting even an expedited overbid process would impose significant carrying costs on the Debtor's estate which the Debtor will have no ability to pay.

28.    The circumstances of this case dictate that a private sale be approved.  Simply put, if the Debtor were forced to engage in an auction process, it would run out of funds to conduct operations, the estate could become administratively insolvent.

29.    For all of these reasons, the private sale of the Debtor's assets as requested herein should therefore be approved.

**B.    Debtor's Sale Pursuant to Bankruptcy Code §363(b) and (f) is Appropriate**

30.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b)(1). Inasmuch as the Assets constitute the Debtors' on-going business and are substantially all of the Debtor's business assets, the proposed sale is out of the ordinary course of the Debtor's business. Section 363 does not set forth an express standard for determining whether a sale of property under §363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard. *See, Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Walter*, 83 B.R. 14, 17 (Bankr. 9th Cir. 1988); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio  1984).

31.    The Court of Appeals for the Second Circuit first enunciated this standard by stating: "The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing *a good business reason* to grant such application." *Lionel*, 722 F.2d at 1070-71 (emphasis added).

32.     Section 363(b) does not require that the Court substitute its business judgment for
that of the Debtor, *See, e.g., Ionosphere Clubs*, 100 B.R. at 676 (court will not substitute a hostile
witness's business judgment for a debtor's, unless testimony "established that the [debtor] had
failed to articulate a sound business justification for its chosen course"). Rather, the Court should
ascertain whether a debtor has articulated a valid business justification for the proposed
transaction. This is consistent with "the broad authority to operate the business of the Debtor . . .
[which] indicates congressional intent to limit Court involvement in business decisions by a
Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good
faith by a Trustee". *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

33.     Other courts have approved the sale of a debtor's assets under §363(b)(1) of the
Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's
management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the
sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See, e.g., In re
Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997) (setting forth the foregoing four
elements in connection with the 363(b)(1) inquiry and citing *In re Delaware & Hudson Ry. Co.*,
124 B.R. 169 (D. Del. 1991); *In re General Bearing Corp.*, 136 B.R. 361, 365-66 (Bankr.
S.D.N.Y. 1992) (suggesting that the salient factors under *Lionel* are the foregoing elements).
Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct
from a decision made arbitrarily or capriciously), courts will generally not entertain objections to
the debtor's conduct." *In re Ames Dept. Stores, Inc.*, 136 BR 357, 359 (Bankr. S.D.N.Y. 1992);
*In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (S.D.N.Y. 1992) (a debtor's business
judgment is entitled to substantial deference with respect to the procedures to be used in selling
assets from the estate). The Debtor has determined that the maximization of the return to

creditors can best be accomplished through a private sale of the Equipment at a price no less than the Sale Price, or alternatively no less than 50% of the scheduled value, and that the sale of the Equipment is in the best interests of its estate and creditors and should be approved by the Court.

34.     In determining whether a "sound business purpose" exists with respect to a sale of assets prior to confirmation of a plan, Courts have looked at such factors as: the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and most importantly perhaps, whether the asset is increasing or decreasing in value. *Lionel*, 722 F.2d at 1071.

35.     In the Debtor's business judgment, the relief sought will maximize the Debtor's recovery on Equipment and is therefore in the best interests of its estate and creditors. Specifically, the soundness of the Debtor's decision is supported by the fact that the Debtor has diminished its general contracting operations (which required the use of the Equipment) and anticipates ceasing all general contracting operations.

## C.     The Debtor Has Exercised Sound Business Judgment

36.     The Debtor believes that the proposed private sale terms represent a prudent and proper exercise of its business judgment and is supported by proper business judgment because, the Equipment are not necessary for the Debtor's reorganization, and the Debtor is proposing terms of sale which will minimize the carry costs of the Equipment pending the sale. *See, NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (the "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs and possible misuse

of economic resources"); *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997) ("public policy, as evidenced by Chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and concomitant preservation of jobs and going concern values").

37.     Further, the Sale Price proposed by the Debtor for the Equipment represents what the Debtor submits is a fair market value. Consequently, in the Debtor's view, sale of the Equipment represents substantial value to the Debtor's estate and provides favorable terms for disposition of the Equipment in exchange for fair and reasonable consideration. *See, Mellon Bank N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1992); *See, also, Mellon Bank N.A. v. Official Comm. Of Unsecured Creditors*, 92 F.3d 139 (3d) Cir. 1996). Moreover, the Debtor's arm's length negotiations with the Purchaser ensured that the ultimate Sale Price secured for the Equipment is fair and reasonable under the circumstances.

**D.      Asset Sale Free and Clear of Encumbrances**

38.     In addition to seeking approval of a private sale outside of the ordinary course of business, the Debtor seeks approval to sell its assets as a going concern, free and clear of any and all liens, claims or encumbrances in accordance with §363(f) of the Bankruptcy Code. A debtor-in-possession may sell property to §§363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

(a)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)  such entity consents;

(c)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of such interest. 11 U.S.C. §363(f).

39.     The conditions set forth in 11 U.S.C. §363(f) are in the disjunctive, which means that only one of the tests must be met. The Debtor believes that the Sale Price proposed for the sale of the Equipment in this manner is in the best interests of the estates and their creditors, for a variety of reasons, including the following: (i) the Debtor believes that an immediate sale of the Equipment is in the best interests of creditors and the estate at large; (ii)  the Sale Price proposed is adequate and represents fair market value of the Equipment to be sold; and (iii)  the sale proceeds will be used to fund operations and a chapter 11 plan.

40.     As stated hereinabove, the Debtor will place all of the sale proceeds from the sale of the Equipment in an attorney escrow account maintained by its bankruptcy counsel in this proceeding. The liens of Bank of America, the Debtor's secured creditor in the approximate amount of $192,000, shall attach to the sale proceeds pending a distribution to Bank of America under a liquidating chapter 11 plan to be filed by the Debtor.

41.     It is therefore submitted that Section 363(f) of the Bankruptcy Code is satisfied and an immediate sale of the Equipment is in the best interests of creditors and the estate and will prevent unnecessary, irreparable harm to the creditors and the estate.

42.     It is within the discretion of the Court to determine whether to approve or disapprove of a method for the disposition of property.  In re Alves, 52 B.R. 353 (Bankr. D.R.I. 1985); See, generally, In re Stogsdill, 102 B.R. 587 (Bankr. W.D. Tex. 1989).

43.     The Debtor respectfully submits that the proposed private sale of the Equipment at the Sale Price proposed, will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative.

## WAIVER OF STAY PERIODS

44.     To preserve the value of the Debtor's estate and expedite the sale of the Equipment, it is important that the Debtor be allowed to close the transactions as soon as possible. Accordingly, the Debtor hereby requests that the Court waive the fourteen (14) day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

45.     The Debtor has served this Motion, with a Notice of Hearing by first class mail upon (i) all parties which have filed notices of appearance, (ii) Secured Creditors, (iii) largest 20 unsecured creditors, (iv) all taxing authorities, and (v) the Office of the United States Trustee, and (vi ) all of the Debtor's creditors.

46.     The Debtor respectfully submits that such notice is good and sufficient under the circumstances, and satisfies the requirements of Bankruptcy Rules 2002, 6004, and 6006.

47.     A proposed sale approval order is annexed hereto as **Exhibit "B".**

## CONCLUSION

48.     The Debtor submits that a private sale of the Equipment is a sound and prudent exercise of its business judgment, which will maximize the value of the Equipment. Accordingly, the Debtor respectfully requests that a private sale of the Equipment for the Sale Price proposed, free and clear of all claims, liens, interests and encumbrances be authorized and approved.

**WHEREFORE**, the Debtor seeks the entry of an order (i) pursuant to §§363(b) and (f)

of the Bankruptcy Code and Bankruptcy Rule 6004, authorizing the Debtor to sell the Equipment

free and clear of any and all claims, liens, encumbrances and other interests thereon and (ii)

granting the Debtor such other and further relief as the Court deems just and proper.

Dated:  White Plains, New York
        November 19, 2014

                                      Respectfully submitted,

                                                 DELBELLO DONNELLAN WEINGARTEN
                                                 WISE & WIEDERKEHR, LLP
                                               *Counsel for the Debtor*
                                               One North Lexington Avenue
                                               White Plains, New York 10601
                                               (914) 681-0200

                                           By: *_/s/ Jonathan S. Pasternak_*
                                               Jonathan S. Pasternak